Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8057 | **DATE** | 11/26/2001 |
| **CASE TITLE** | THEOPHILUS GREEN vs. MASSACHUSETTS CASUALTY INS. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: this Court affirms the November 22, 1999 holding of the United States Bankruptcy Court and denies Green's request for sanctions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | NOV 28 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 54 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 NOV 27 PM 4:45 | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THEOPHILUS GREEN, | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzman |
| | ) | |
| MASSACHUSETTS CASUALTY | ) | 99 C 8057 |
| INSURANCE COMPANY | ) | |
| | ) | DOCKETED |
| Appellee/Plaintiff. | ) | NOV 2 8 2001 |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is appellant Theophilus Green's appeal from a decision rendered in the United States Bankruptcy Court and his request for sanctions against opposing counsel. For the reasons that follow, the bankruptcy court's decision is affirmed and the appellant's request for sanctions is denied.

### Facts

Theophilus Green ("Green") was a licensed clinical psychologist practicing in Illinois. Massachusetts Casualty Insurance Company ("MCIC") is a disability insurance providing company.

On December 16, 1993, Green applied for disability insurance and overhead disability insurance from MCIC. Allan Bloomfield ("Bloomfield"), an insurance agent, completed the applications for Green. Bloomfield used the information provided by Green directly and from his prior insurance policy. The application materials required a thorough reporting of all medical

1

54

history and past insurance policies.[1] Green provided authorization for release of the required information including both medical and non-medical data from his previous insurers, the Veteran's Administration, and medical care providers. He signed and dated the applications agreeing to the terms and releases on December 16, 1993.

MCIC subsequently issued a disability insurance policy to Green on March 11, 1994. Green received both disability and overhead disability insurance policies. The policies would pay him benefits as beneficiary if he became disabled. MCIC requested certain forms to be completed and returned as part of the enrollment process.

On March 28, 1994, Green submitted two Statement of Health forms to MCIC. The forms became part of the insurance policies upon execution. The statements included three questions pertaining to his health.[2] He failed to disclose any of his current or past physical or mental ailments, and avowed to the truthfulness of his statements by signing and dating the documents.

In June 1994, Green suffered a stroke and subsequently entered a claim for benefits from the policies. MCIC paid him benefits totaling $39,940.50. During the ensuing investigation into Green's claims, MCIC discovered several discrepancies concerning his disclosures. MCIC's findings included: (1) Green had received treatment from Dr. Patrick Israel for recurring episodes of depression and anxiety since 1985; and (2) he had been receiving disability benefits from the

---

[1] The application included the following questions: 8. Have you ever been treated for or had any known indication or symptom of...(a) chest pain, high blood pressure, **mental**, nervous or **emotional** conditions (to include but not limited to anxiety, depression or stress)... ?; and 11. in the past 5 years have you: (b) received or been refused any disability or medical benefits...? (emphasis added) Green answered both questions in the negative.

[2] 1)...I am now hand have continued in the same status of health (mental and physical) as indicated on the application for said Policy...
2) I further represent that since the date of the aforesaid application...(1) I have had no injuries, ailments or illnesses and have not been sick from any cause, and have not been confined to any hospital or institution.
3) I hereby represent to the best of my knowledge and belief that all the foregoing statements are true and complete.

2

Veteran's Administration since 1989 as a result of a 1968 diagnosis that he suffers from paranoid schizophrenia.

MCIC thereafter notified Green of its decision to rescind the disability insurance policies on February 6, 1995. MCIC notified him that his claims had been denied and that he would have been entitled to a refund of premiums paid if he had not received benefits. As MCIC had disbursed benefits to Green on the policies (after his stroke), it requested that he repay $36,682.86, the amount of benefits paid to Green minus premiums paid to MCIC. Green in turn responded by letter on March 13, 1995, stating that he was in turn rescinding his release of information from personal records. MCIC filed its complaint against Green to rescind the insurance contracts in the Circuit Court of Cook County Illinois ("Circuit Court") on September 13, 1995, alleging that Green made material misrepresentations in his applications for disability insurance. MCIC also sought to recover the balance of benefits paid to Green under the policy.

Green thereafter filed a petition for Chapter 11 bankruptcy under Bankruptcy Code 11 U.S.C. § 101, on October 22, 1997. The petition was later converted to a Chapter 7 filing. As a result, the rescission action in the Circuit Court was automatically stayed pursuant to 11 U.S.C. §362. MCIC then filed for a damages award and a declaration that Green's debt was nondischargeable in bankruptcy due to the misrepresentation in his applications. Green filed numerous counter-claims seeking a declaration of coverage and tort damages under common law. The trustee decided not to take action and abandoned the counter-claims to Green.

The bankruptcy court denied Green's motion for exclusion of medical information and dismissed (without prejudice) counts II, IV, V, and VI of Green's Second Amended Complaint for want of subject matter jurisdiction. The court further declared that the disability insurance policies

were rescinded and void. Because the policies were rescinded, the court additionally ordered that MCIC repay Green the premiums he had paid. However, the court granted MCIC's summary judgment motion concerning the dischargeability of the debt for benefits paid, meaning that the premiums that MCIC owed Green would be offset against the debt he now owed.

## Discussion

Green raises numerous issues on appeal. The following issues raised in his initial brief will be addressed. He claims that the bankruptcy court erred: (1) in asserting jurisdiction to determine the validity of the insurance policy; (2) in holding that the policy should be rescinded for material misrepresentation; (3) by not dismissing MCIC's complaint as improperly filed; (4) by dismissing Green's counterclaims; (5) by admitting Green's medical history into the record; (6) in allowing MCIC to file its complaint beyond the statute of limitations; (7) and by not leveling sanctions against MCIC.[3]

### I.     Standard Of Review

This Court acts as an appellate court when reviewing a bankruptcy court decision, and applies the same standards of review as are appropriate in other appellate decisions. Deference will be given to the findings of fact by the bankruptcy judge. *In re Reines*, 142 F.3d 970 (7th Cir. 1998). The proper standard of review of a bankruptcy court is *de novo* for questions concerning legal findings. Questions of fact should be reviewed only for clear error. *In re Frain*, 230 F.3d 1014 (7th Cir.

---

[3] Green raised several additional issues for the first time in his reply brief. (*See* Appellant's Reply Br. at 13.) The Court will not address these issues as "[t]he scope of the reply brief must be limited to addressing the arguments raised by the appellee. The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court." *United States v. Feinberg*, 89 F.3d 333, 340-341 (7th Cir. 1996).

4

2000). The findings of the bankruptcy court should be affirmed as long as they "are plausible in light of the record reviewed in its entirety." *In re Christensen*, 193 B.R. 863, 865 (N.D. Ill. 1996).

## II.     The Bankruptcy Court's Jurisdiction

Green first argues that the bankruptcy court did not have proper jurisdiction to rule on the validity of his insurance policy. For this reason, it is important to point out that district courts have granted the bankruptcy courts with jurisdiction to hear related issues. *In re FedPak Systems, Inc.*, 80 F.3d 207, 213 (7th Cir. 1995). This is because "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets." *Matter of Xonics, Inc.*, 813 F.2d 127, 131 (7th Cir. 1987). "A case is related to bankruptcy when the dispute affects the amount of property for distribution or the allocation of property among creditors." *Id.* at 213-214 (internal quotations omitted). For this reason, the bankruptcy court's exercise of jurisdiction in reaching a decision concerning the rescission of the insurance policy was proper.

Both rescission and dischargeability are core issues to a bankruptcy decision, under § 157 (b)(2)(I) of the Bankruptcy Code 28 U.S.C. § 157(b), and thus they are "related." A "proceeding is core under §157 if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990). The validity of the insurance policies is directly related to the debt discharge and is therefore properly considered a core proceeding. Moreover, a motion for nondischargeability of debt has no meaning outside the context of a bankruptcy proceeding. The amount of money and property available in Green's estate for other creditors is directly affected by the dischargeability of the debt owed to MCIC as Green will not be able to utilize the benefits he collected from MCIC under the policy at issue to satisfy other creditors. The status of the insurance policy rescission and

5

related debt for repayment of benefits paid to Green is inextricably intertwined with the bankruptcy estate. Thus, the bankruptcy court properly exercised its jurisdiction in hearing MCIC's complaint concerning rescission of the insurance policy and in ruling on the dischargeability of Green's debt to MCIC.

The Court agrees with the bankruptcy court's decision with regard to the nondischargeability of Green's debt to MCIC.[4] Section 523 of the Bankruptcy Code provides that a debt shall be nondischargeable when: (1) the debtor obtained monies; (2) the debtor acted with intent to deceive; and (3) the plaintiff justifiably relied on the debtor's deception. Here, all three elements are met.

First, Green obtained monies when he received benefits payments from MCIC for his disability claims. Next, the bankruptcy court found that Green had intentionally misrepresented his medical history in his application and rider materials. The court was not erroneous in making this factual determination as it stretches the imagination to believe that Green inadvertently forgot to include facts concerning the receipt of benefits from the Veteran's Administration. Moreover, the questions concerning current medical history were patently clear. Again, it is difficult to see how Green was not purposeful in omitting the treatment he was receiving from Dr. Israel. Finally, MCIC relied on Green's false answers concerning his medical history and issued the disability policy to Green. MCIC claims, that it would not have issued the policy had Green been forthcoming with the pertinent information.[5]

---

[4] The Court will address the dischargeability decision as Green is a pro se litigant and it appears that he is contesting it.

[5] Green also claims that the bankruptcy court erred in allowing a frivolous suit to continue. The Court finds that all claims raised by MCIC were within appropriate legal actions.

6

There is no clear error in the bankruptcy court's determinations concerning the facts surrounding Green's application for insurance to MCIC, and the court properly determined that Green's debt to MCIC was nondischargeable. Therefore, the Court affirms the bankruptcy court's grant of MCIC's motion for summary judgment concerning jurisdiction and nondischargeability of debt.

### III. The Bankruptcy Court's Rescission Of Green's Policy

As an alternative to improper jurisdiction, Green argues that the contract could not be rescinded because the contract was fully executed.[6] He further attempts to claim that the insurance contract itself was an improper "bait and switch" and should not have been allowed by the bankruptcy court.[7] Disregarding the discrepancy in Green's logic (that on one hand the court does not have jurisdiction to rule on the rescission of the policy, and on the other that the court should not allow the insurance policy at all), none of these claims are meritorious. However, each claim will be addressed in turn.

#### A. Executory Contract

Green contends that the insurance policy became a fully executed executory contract when MCIC issued his policy because there were no further actions to be taken by either party. He argues that, for this reason, it could only be rescinded by mutual consent. However, he did not cite any case

---

[6] The Court notes that great leniency is offered to pro se litigants in both the form and interpretation of their pleadings.
[7] Green alleges that the rescission action was brought as part of a subterfuge to hide a "switch" in the coverage his policy offered. Green offers no facts or case law in support of his allegations. Without more, this Court is unable to determine the validity of his assertion. In addition, it should be noted that this cause of action centers around Green's actions resulting in his misrepresentation, not the actions of MCIC in executing the disability policy. [Doc. No. 53]

7

law to support this argument and the Court's own research did not uncover any cases that support it.

Green also claims that since a benefit had been paid under the policy, the policy "contract" was beyond the authority of the court. (*See* Appellant's Br. at 12.) He cites to *In re Cochise College Park*, a Ninth Circuit decision to support this proposition. However, this case is not on point as the facts are wholly dissimilar. Green's contract theory is entirely without support. As will be discussed below, the policy was properly rescinded under Illinois law on the basis of fraud by a material misrepresentation.

B.   **Rescission**

The bankruptcy court properly applied Illinois law in reaching its decision to rescind the policy. Section 154 of the Illinois Insurance Code allows for rescission of insurance policies when an applicant makes a material misrepresentation on their application. The Code states:

> No misrepresentation or false warranty **made by the insured** or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement rider attached thereto, or in the written application therefor. No such misrepresentation or false warranty shall defeat or avoid the policy unless it shall have been made with **actual intent to deceive or materially affects** either the acceptance of the **risk or the hazard assumed** by the company.

215 ILCS 5/154 (emphasis added).

"Incomplete answers or a failure to disclose material information on an application for insurance may constitute a misrepresentation when the omission prevents the insurer from adequately assessing the risk involved." *Methodist Med. Ctr. v. American Med. Sec. Inc.*, 38 F.3d 316, 320 (7th Cir. 1994). When that information, or the withheld information affects the decision

8

making process of the insurer, the misrepresentation is material. *Cohen v. Washington Nat'l Ins. Co.*, 529 N.E.2d 1065, 1067 (Ill. App. Ct. 1988). "[T]he misrepresentation whether it be accomplished by stating facts or withholding facts, need not be made with intent to deceive if it materially affects the risk, nor need the misrepresentation be one with regard to a matter upon which a claim is later predicated." *Unger v. Metropolitan Life Ins. Co.*, 242 N.E.2d 907, 910 (Ill. App. Ct. 1968).

A fact is considered material when, after examination, the misrepresentation, "would cause reasonably careful and intelligent persons to regard the fact as stated to substantially increase the chances of the event insured against, so as to cause a rejection of the application." *Id.* An insurance company may establish the materiality of the missing information based on the findings of its underwriters. "The materiality of a misrepresentation may be established by the underwriter's testimony or testimony of the insurer's employees." *Garde v. Country Life Ins. Co.*, 498 N.E.2d 308 (Ill. App. Ct. 1986). *See also Unger v. Metropolitan Life Ins. Co.*, 242 N.E.2d 907 (Ill. App. Ct. 1968) (holding that an underwriter's assessment of an insured's medical records is sufficient for a determination of materiality).

Clearly, Green did not disclose his complete and accurate medical history on his application for disability insurance from MCIC.[8] The facts indicate that Green did not inform MCIC that he had been receiving disability benefits from the Veteran's Administration for the past twenty-five years or that he had been under the care of Dr. Israel. Dr. Israel has stated in correspondence that Green had been receiving care, and that his symptoms included depression and anxiety. (Appellee's Br.

---

[8]Green continues to allege that there has been no finding of fraud against him by any court. This is clearly not true. The bankruptcy court found his applications materials be fraudulent. *See In re Green*, 241 B.R. at 565.

Ex. M.) Dr. Israel testified at his deposition that Green was under his care until August of 1994. (Appellee's Br. Ex. O.)

The disclosure of these facts would have had a significant impact on MCIC's decision whether to issue a disability insurance policy to Green. The lack of full disclosure by Green caused MCIC to accept a higher level of risk in issuing a policy to Green. Had he been forthcoming with his medical history, MCIC would have been able to make an informed decision concerning the risk of insuring an applicant such as Green. Moreover, according to MCIC, their underwriter stated in his affidavit that "[t]he misrepresentations Green made were material in that MCIC would not have issued the Policies as written if Green had disclosed the information concerning his mental illness." (*See* Appellant's Br. at 14.) For these reasons, the bankruptcy court correctly determined that Green made a material misrepresentation in his application, and that the misrepresentation materially affected the risk accepted by MCIC.

It is important to note once again that, "[i]t is unnecessary for the insurer to prove that a misrepresentation was made with the intent to deceive if it was material to the risk assumed." *Johnson-Maday v. Prudential Ins. Co.*, 657 N.E.2d 1114, 1117 (Ill. App. Ct. 1995). Thus, the issue of whether Green intended to deceive MCIC is neither before this Court nor dispositive. "The Illinois Supreme Court has made clear that any single material misrepresentation is grounds for canceling an insurance policy, even though the insured may not have intended to deceive the insurer." *Life Ins. Co. of North America v. Roberson*, 276 F. Supp. 639, 641 (S.D. Ill. 1967).

However, the bankruptcy court made a clear determination that Green at the least knew that he was identified as a paranoid schizophrenic when filling out his insurance materials. *In re Green*, 241 B.R. 550 (N.D. Ill. 1999). The court stated that he, "clearly knew that he had been diagnosed

as a paranoid schizophrenic," because he had been receiving benefits from the Veteran's Administration. since at least December 1989. *Id.* at 564. The record as presented is rife with facts pointing to Green's knowledge of his medical history and receipt of disability benefits from the Veteran's Administration. As there is no indication of clear error, this court affirms the bankruptcy court's rescission of the policies on the basis of material misrepresentation.

## IV. The Bankruptcy Court's Denial of Green's Request For Dismissal Of MCIC's Complaint

Green next argues that the bankruptcy court should have dismissed MCIC's claim for relief on the grounds that it was improperly filed. He points out that MCIC requested two types of relief in a one count complaint. He claims that MCIC's complaint improperly sought sanctions as well as relief policy damages. Even with the most lenient of readings, this claim cannot succeed. *See Zavesky v. Cherrerville*, No. 89-3568, 1991 U.S. App. LEXIS 18951 (7th Cir. Aug. 8, 1991). In federal court, the pleading requirements contained in the Federal Rules of Civil Procedure apply. Rule 8 states:

> [a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction in support of it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks. **Relief in the alternative or of several different types may be demanded.** (emphasis Added).

Fed. R. Civ. P. 8. As MCIC filed its complaint in a federal bankruptcy court, its pleadings are sufficient.

11

## V. The Bankruptcy Court's Dismissal Of Green's Counter-Claims And Refusal To Allow RICO And Conspiracy Claims

Green next argues that the bankruptcy court erred when it elected not to rule on certain claims raised in the Second Amended Counterclaim. He also claims that the court erred in not permitting civil RICO and conspiracy claims to be raised.

### A. Counter-Claims

Counts I and III of the counterclaim addressed breach of contract issues. These claims were implicitly decided when the bankruptcy court addressed the Dischargeability Complaint. However, Counts II, IV, V, and VI of the counterclaim raised torts claims that were not core nor related to the bankruptcy claim. The bankruptcy court properly held that it did not have subject matter jurisdiction over these tort claims. State tort claims that are independent of the bankruptcy proceeding are beyond the jurisdiction of the bankruptcy court. *Horwitz v. Alloy Automotive Co.*, 992 F.2d 100, 103 (7th Cir. 1993). Judge Katz held,

> The facts alleged in those counts center on MCIC's conduct during the course of its litigation against Green. They are not immediately connected with the events leading to the prayer for rescission and hte complaint to determine dischargeability., i.e. Green's fraudulent misrepresentations in the Applications. Nor is there jurisdiction under §157(b)(2)(C). That section encompasses only those counterclaims brought by the bankruptcy estate against persons filing claims against the estate. 28 U.S.C. §157 (b)(2)(C). The trustee has abandoned the causes of action set forth in the Second Amended Counterclaim and therefore, none of these causes of action are part of the bankruptcy estate. The estate did not bring the Second Amended Counterclaim; Green brought it on his own behalf. The common law causes of action set forth in Counts II, IV, V, VI of Green's Second Amended Counterclaim do not arise under Title 11. They do not involve substantive rights created by the Bankruptcy Code.

*In re Green*, 241 B.R. 550, 559 (N.D. Ill. 1999). The bankruptcy court dismissed the claims without prejudice, allowing Green to raise the claims in any court having proper subject matter jurisdiction.

12

*In re Green*, 241 B.R. 550. This Court agrees with the bankruptcy court's conclusions of law concerning Green's counterclaims.

### B. RICO and Conspiracy Claims

Green contends that the bankruptcy court should have granted his motions to raise civil RICO and conspiracy claims against MCIC and the court. Without passing judgment on the viability of these claims, this Court agrees with the bankruptcy court that even if they are valid, the bankruptcy court is not the proper venue.

These claims are appropriate for traditional civil courts, not a bankruptcy court. The weight of authority indicates that bankruptcy courts are not the appropriate courts to go to with civil RICO claims. Courts have not found RICO claims to be core to the bankruptcy proceeding. *See Barnett v. Stern*, 909 F.2d 973, 980 (7th Cir. 1990). Furthermore, as there is no indication that Green raised these claims in his answer or in any counter-claim in the court below, these claims were raised for the first time on appeal. For this reason, the Court cannot now hear these claims.

### VI. The Bankruptcy Court's Decision Regarding The Admissibility of Green's Health Care Documents

Green next alleges that the bankruptcy court did not have the power to rule on the admissibility of the health care documents concerning his medical history. (Appellant's Br. at 14.) Because the documents at issue are central to the determination of whether there was a material misrepresentation in Green's application materials, the bankruptcy court did have jurisdiction and properly held the documents to be admissible. In order to determine the ultimate question of the dischargeability of the debt, the Court first had to determine whether there was a material misrepresentation in the application that warranted rescission of the policy. To determine whether

13

there was a material misrepresentation in the application, a review of Green's medical information was necessary. In determining whether rescission is appropriate, it is crucial for this Court and the bankruptcy court to consider the medical records. There is no better method for a court to determine as a matter of fact the accuracy of the claims that there had been a misrepresentation.

The Illinois Mental Health and Developmental Disabilities Confidentiality Act contains a provision whereby documents that are otherwise privileged under the Act may be admitted in order to establish the validity of insurance policies. The relevant section of the Act states:

> Records and communications of the recipient may be disclosed in any civil or administrative proceeding involving the validity of or benefits under a life, accident, health or disability insurance policy or certificate, or Health Care Service Plan Contract, insuring the recipient, but only if and to the extent that the recipient's mental condition, or treatment or services in connection therewith, is a material element of any claim or defense of any party, provided that information sought or disclosed shall not be redisclosed except in connection with the proceeding in which disclosure is made.

740 ILCS §110/10(a)(7). "While the court sympathizes with Green's sensitivity about the publication of such information, it is clear from the uncontested facts that Green's embarrassment could have been avoided had he not made material misrepresentations when applying for the policy and the rider." *Green*, 259 B.R. at 298. He agreed to allow MCIC to investigate his medical history when he applied for the disability insurance. The application form clearly requested the applicant to authorize release of his medical records for a laundry list of agencies and providers, and he signed the application form on the very same page. (Appellee's Br. Ex. 2 at 3). The Court finds that the bankruptcy court properly admitted the pertinent medical history into the record in order to reach its decision.

14

Green also makes a claim for an award of sanctions for the alleged violations of medical confidentiality from the release of his medical records. Again, his claim is without merit. Since his medical history was properly admitted, there was no violation. The potential violation for a breach of privileged confidence is completely mitigated by the material misrepresentation exception in the Illinois Code. *See supra.*

## VII. The Bankruptcy Court's Decision Regarding The Statute Of Limitations

Green also claims that the bankruptcy court should have dismissed MCIC's claim for rescission on the basis that the action was brought after the statute of limitations had tolled. However, Green does not cite to the relevant statute governing statutes of limitations concerning claims alleging fraud.

Moreover, Green attempts to utilize the statute of limitations as an affirmative defense for the first time in this appeal. It is well-established that any affirmative defenses not raised in the answer, or during proceedings below are considered waived and cannot be raised on appeal. Illinois Rules of Civil Procedure clearly require all affirmative defenses to be raised in the pleadings:

> The facts constituting any affirmative defense, such as ... statute of frauds, and any defense which by other affirmative matter seeks to avoid the legal effect of or defeat the cause of action set forth in the complaint, counterclaim, or third-party complaint, in whole or in part, and any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply.

735 ILCS 5/2-613(d) (2001). Even, if the affirmative defense were timely raised, Green still does could not succeed on this claim. Green incorrectly asserts that the statute of limitation only runs for two years (applying the statute of limitations for the statute of frauds). 735 ILCS §5/13-205 is the statute of limitations that governs issues concerning fraud and material misrepresentations. As such,

15

it is the statute of limitations that governs the current matter and clearly states, "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS §5/13-205 (2001).

A brief review of the facts will demonstrate that these actions were commenced within the five-year statute of limitations. Green initially applied for disability insurance from MCIC in February 1993. In March 1994, he further submitted Statement of Health forms to MCIC that were to become part of issued disability insurance policy. MCIC notified Green of its decision to rescind the policy on February 6, 1995. MCIC filed an initial complaint in the Circuit Court of Cook County in September 1995, seeking rescission of the disability insurance policy. In 1998, the present action was commenced by MCIC moving for a declaration of nondischargeability of the debt.

All actions concerning this matter were commenced within four years of the last submission by Green. Even if MCIC could have discovered Green's misrepresentation immediately following his last filing in March 1994, the statute of limitations would not have tolled until 1999. Therefore, the bankruptcy court properly heard and reached a determination concerning rescission of the policy.

## VIII. Green's Request For Imposition Of Sanctions

In addition to the sanctions requested *supra*,[9] Green also requests sanctions to be levied against opposing counsel. In support of this request, he claims that counsel for MCIC acted in an unprofessional manner. He argues that they intentionally pursued this litigation as a vehicle to collect legal fees from their clients (and that the bankruptcy court sanctioned or condoned this conduct by its inaction). As Green has not offered any facts to support this allegation, the Court will

---

[9] Green claimed sanctions were appropriate on the following grounds: (1) use of confidential medical files; (2) violation of medical confidentiality; and (3) bringing a frivolous lawsuit.

not address it. *See In re Zolner*, 249 B.R. 287 (N.D. Ill. 2000) (the court denied a request for sanctions on the grounds that the appellee had not provided enough support.)

## Conclusion[10]

For the abovementioned reasons, the Court affirms the November 22, 1999 holding of the United States Bankruptcy Court and denies Green's request for sanctions.

SO ORDERED:                                                ENTER. 11/26/01

*[signature]*
HON. RONALD A. GUZMAN
**United States Judge**

---

[10]This decision has been expedited per the request of Green. [Doc. No. 52]